IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| JEANETTE SLAUGHTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-12-018 |
| | § | |
| COLLEGE OF THE MAINLAND, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendant College of the Mainland's Amended Motion to Dismiss (Dkt. No. 28), to which Plaintiff Jeanette Slaughter filed a response (Dkt. No. 31), and Defendant filed a reply. (Dkt. No. 35). After reviewing the pleadings, the amended motion to dismiss, the response, the reply, and the applicable law, the Court issues this Opinion and Order.

## I. BACKGROUND

Plaintiff Jeanette Slaughter (Slaughter) brings this action against her employer, Defendant College of the Mainland (COM) alleging retaliation after she was identified as a witness in a sexual harassment cause of action that a former co-worker brought against COM. (Dkt. No. 1).

According to the facts alleged in her amended complaint, Slaughter is an African American. She has been employed by COM since September 1988, and currently holds the position of Administrative Assistant in the Department of "PELAWS AND WEEKEND

1

COLLEGE." (Dkt. No. 25).

In or around July 2008, a former employee, Sandra Brewer (Brewer) filed an administrative complaint against Al Bass (Bass), the Wellness Director and Dean of PELAWS and Weekend College, alleging sexual harassment. (Dkt. No. 25 at 2). In her complaint against Bass, Brewer listed Slaughter as a witness which, at some point, prompted Slaughter to be interviewed by Lonica Bush, the Executive Director in the Office of Diversity and Equity. (*Id.* at 3).

Slaughter also alleges that as a result of being named as a witness she was targeted by Bass. In particular, Slaughter alleges that on September 4, 2008, she was "stripped of her duties as the Administrative Assistant II/Facilities Assistant/Supervisor." (Dkt. No. 25 at 3). She also alleges, although she does not indicate when these events occurred, that she was subjected to the following: she was "moved to the front desk area"; she was "isolated" from meetings, information and other personnel within the department; she was "no longer on speaking terms with [her] ultimate supervisor, Al Bass"; and her compensation level was reduced due to her change in duties. (*Id.* at 3).

Slaughter alleges that in March 2010, the Administration and the Board dismissed Brewer's administrative complaint and, thereafter, Brewer filed a lawsuit in state court alleging claims of sexual harassment and racial discrimination against COM. (Dkt. No. 25 at 4). In support of her state court action, Brewer informed her attorney that Slaughter was a witness who was willing to provide her testimony. (*Id.*).

After Brewer filed her lawsuit against COM in 2010, Slaughter alleges that she was once again targeted. On June 29, 2010, Slaughter alleges her immediate supervisors, Tige Cornelius and Marion Stevens, acting on the direction of Bass, called her in for a meeting. At the meeting,

2

Slaughter was given an "unsigned Level 2 disciplinary action for 'slander of a co-worker' and for being unable to maintain socially acceptable behavior standards of conduct suitable to cooperative and efficient work environment." (Dkt. No. 25 at 5). Slaughter inquired about the basis of the alleged slander. She was told that Bass had learned that she made a comment to Tammy Stafford (Stafford) on or around June 24, 2010, about having a couch moved into his office and someone claimed that she also commented that "now he [Bass] doesn't have to go to a motel." (*Id.*). Slaugther denied making any such comment. She requested a copy of the disciplinary action, but her request was refused. (*Id.*).

Only days later, Bass sent Slaughter an email requesting a meeting. He did not inform her of the nature of the meeting and denied her the right to have representation present. (Dkt. No. 25 at 5). Slaughter met with Bass on July 8, 2010, and also present were representatives from the HR Department and her immediate supervisor. (*Id.*). During the meeting, Slaughter was presented with a disciplinary action that had been revised to allege "slander of an administrator and defiance of a departmental directive given at the meeting of June 22, 2010." (*Id.* at 6). Slaughter denied the allegations and objected to the fact that the disciplinary action was based on nothing more than hearsay. Slaughter alleges that Bass responded to her protestations by referring back to the charges that Brewer had lodged against him two years before and commented "[t]hat's the beauty of it. Things always have a way of presenting themselves, if you just wait." (*Id.*). At the conclusion of the meeting, Slaughter was not provided a copy of the signed disciplinary action. (*see id.* at 6-7).

Following this meeting, Slaughter received an email, which Bass forwarded to her, requesting a statement about the comments she allegedly made on June 29th. (Dkt. No. 25 at 6).

Stafford was also emailed with a request that she provide a statement regarding Slaughter's remarks. Despite being prompted by Bass concerning the nature of the alleged comment, Stafford replied that she did not recall the comment made by Slaughter. (*Id.*).

On July 12, 2010, Bass called Slaughter in for another meeting. (Dkt. No. 25 at 6). Stafford was present at this meeting. (*Id.* at 7). Slaughter explained that going into this meeting she had still not been provided the signed disciplinary action. At the start of the meeting, Bass mentioned Brewer's pending lawsuit against COM in which Slaughter was listed as a witness. (*Id.*). Bass told Slaughter that her involvement in the lawsuit created a conflict for him because he admitted that he definitely had thoughts about "bringing [her] down" or "getting [her]" with the disciplinary action. (*Id.*). Bass informed Slaughter that the conflict precluded him from taking direct action against her. (*See id.*). Bass' statements lead Slaughter to infer that Bass was "bargaining for [her] silence in the lawsuit, because he was not taking action against [her]." (*Id.*).

After the meeting, Slaughter alleges that steps were taken to isolate her. (Dkt. No. 25 at 8). For example, she claims that on August 9, 2010, Bass instructed another employee, Dorothy Kemp (Kemp), not to interact with her. Slaughter also understood that Kemp had received a written disciplinary notice for allowing Brewer into the Wellness Center and that Kemp was instructed not to let other maintenance workers, particularly those with whom Slaughter had previously interacted, into the Wellness Center. In addition, after Slaughter made an "unrelated request" to Bass for a government clearance employment reference, she was told that "until and unless she provided to him detailed information that he could use in the Brewer case, her request

4

would be denied." (*Id.* at 8).[1]

In late August of 2010, with the investigation of the complaint against her slandering a co-worker still pending, Slaughter was given a leave of absence[2] from August 26, 2010 to September 7, 2010, by her immediate supervisor. (Dkt. No. 25 at 7). In addition, with a complaint lodged against him for retaliation, Bass was given a leave of absence from August 26, 2010 to September 7, 2010, by COM's President. (*Id.* at 9).

On August 30, 2010[3], Slaughter was assigned the duties of Wellness Center Attendant – a position that had duties and a work space that was "less desirable" and, according to Slaughter, presented "severe safety concerns." (Dkt. No. 25 at 9).

At some point, although it is not clear when, Slaughter submitted a charge to the EEOC, (Dkt. No. 25 at 2). Slaughter alleges that the EEOC issued her right to sue letter on August 17, 2011 and she received it on or about August 19, 2011.[4] (*Id.*).

On November 17, 2011, Slaughter filed suit against her employer, Defendant COM. Slaughter, bringing her action pursuant to 42 U.S.C. §§ 1981 and 1983, alleges that COM had a policy, practice or custom of sitting back and allowing retaliation and only stepped in when Slaughter disclosed her tape recording of Bass' rants. (Dkt. No. 1). Defendant filed an answer and later filed a motion to dismiss. (Dkt. Nos. 15, 21). In response, Plaintiff filed an amended

---

[1] It is not clear to this Court if Slaughter in her factual allegations is suggesting that she was prevented from applying for and/or being considered for other positions.

[2] Slaughter does not allege whether the leave of absence was with or without pay.

[3] It would appear that the reference to "August 30, 2020" represents a typographical error.

[4] Because this action was filed in November of 2011, it appears that the reference to "2012" represents a typographical error.

complaint in which she added a cause of action under Title VII. (Dkt. No. 25). Defendant then filed an amended motion to dismiss on the ground that Slaughter has failed to assert basic facts necessary to support a claim under §1981, §1983 or Title VII. (Dkt. No. 28) Plaintiff filed a response (Dkt. No. 31) and then Defendant filed a reply. (Dkt. No. 35). The Defendant's Amended Motion is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). The well-pleaded facts must state a claim that is plausible on its face, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Highland Capital Mgmt., L.P. v. Bank of Am., Nat'l Ass'n*, 698 F.3d 202, 205 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### A. Section 1981 Claim

Slaughter alleges that COM subjected her to retaliation under §1981. COM insists this claim should be dismissed because her factual allegations do not support a claim under §1981. (Dkt. No. 28 at 8-10). The Court agrees. Having reviewed Slaughter's amended complaint, the Court finds that Slaughter mentions in passing that she is an African American, however, she fails to allege any facts that even suggest that race played a role in this case. 42 U.S.C. §1981(a); *see*

*also*, *Runyon v. McCrary*, 427 U.S. 160, 167 (1976) (holding §1981 protects against race-based discrimination); *Foley v. Univ. of Houston System*, 355 F.3d 333, 339 (5th Cir.2003) (explaining that §1981 protects against retaliation for opposition to race discrimination in the workplace).

The Court, therefore, concludes that COM's Amended Motion to Dismiss Slaughter's retaliation claim under §1981 should be **GRANTED** because Slaughter has failed to allege sufficient facts which could plausibly support a claim for relief against COM under §1981. *See generally*, *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (clarifying that "[w]hile 'specific facts are not necessary,' some facts are." (citation omitted)).

### B. Title VII Claim

Slaughter also alleges that COM subjected her to retaliation in violation of her rights under Title VII. COM insists that Slaughter's retaliation under Title VII must also be dismissed because the alleged events or adverse action that occurred in 2008 are time barred; none of the alleged action taken against her after that point constitutes "adverse action"; and she has failed to allege sufficient facts to suggest that the adverse actions were taken against her because she participated in activity that was protected by Title VII. (Dkt. No. 28 at 13-14).

To establish a prima facie case for retaliation under Title VII, a plaintiff must ultimately present evidence that (1) she engaged in activity protected by Title VII, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *See Turner v. Baylor Richardson Med.Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *Foley*, 355 F.3d at 339–340.

In the present case, construing her pleadings liberally, the Court finds that Slaughter has alleged sufficient facts to meet the first element of a Title VII retaliation claim – that she engaged

7

in activity protected by Title VII. The law provides that an employee engages in protected activity by either (1) opposing any unlawful employment practice under Title VII; *or* (2) filing a charge of discrimination or otherwise participating in any manner in a Title VII matter. *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir.2005). Here, Slaughter alleges that she was willing to be listed as a witness for purposes of the administrative grievance and, after Brewer filed suit against COM, she was willing to testify as a witness in Brewer's lawsuit. 42 U.S.C. §2000e-3(a); *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 279 (2009); *Dubaz v. Johnson Control World Servs.*, 163 F.3d 1357, 1998 WL 858836, at *2 (5th Cir. Nov. 20, 1998) (determining that a plaintiff engaged in protected activity when she offered deposition testimony in a lawsuit).

Slaughter has also alleged sufficient facts to meet the second element of a Title VII retaliation claim – that she suffered an adverse employment action.[5] In the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-70 (2006); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). This requires a showing that the challenged conduct "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McCoy*, 492 F.3d at 559. Despite her pleadings, COM argues that any actionable adverse actions that Slaughter has alleged occurred in 2008 and is, therefore, time

---

[5] In her amended complaint, Slaughter alleges she was suffered the following adverse employment actions: (1) her job duties/positions were changed in 2008 and 2010; (2) she suffered a reduction in her compensation with the change(s) in duties; (3) she was isolated from meetings, information and other personnel; (4) she was moved to an unsafe work area in August 2010; (5) she was placed on administrative leave for approximately two weeks; (6) she was forced to attend different meetings where she was threatened with disciplinary action; and (7) although not entirely clear, she suggests that she was precluded from applying for any other jobs or obtaining a job reference unless or until she provided "detailed information" that could be used in the Brewer case. (Dkt. No. 25 at 3, 6-7, 8-9).

barred. Slaughter has not alleged a time frame for when some of the alleged actions occurred (*i.e.*, the reduction in her compensation) and this Court is unable to conclude, despite COM's urging, that all the adverse actions occurred in or around September 2008, because Slaughter has alleged that her duties changed not only in September of 2008, and also in late August 2010. (Dkt. No. 25 at 3, 8-9).

Finally, Slaughter has alleged sufficient facts concerning the third element required to support a prima facie case of retaliation – the existence of a causal link between the protected activity and the adverse employment action. See *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n. 8 (5th Cir.1998) (recognizing that the burden of establishing this "causal link" element of a prima facie case is much less onerous than the standard for proving "but for" causation required for the determination of the ultimate issue of retaliation. ); *Martin v. J.A.M. Distributing Co.*, 674 F.Supp.2d 822, 843-44 (E.D.Tex. 2009). A review of her pleadings reflects that Slaughter has alleged that she has worked for COM since 1988, she encountered no problems in the workplace until she was listed as a witness in Brewer's complaint in July 2008, and, shortly after being listed as a witness in the legal action Brewer filed in state court against COM in March of 2010, Slaughter was subjected to adverse actions in retaliation for her involvement in the protected activity. At this stage of the litigation, accepting her allegations as true, Slaughter has stated a plausible claim of retaliation against COM under Title VII.

Accordingly, the Court concludes that COM's Amended Motion to Dismiss Slaughter's retaliation claim under Title VII should be **DENIED**.

### C. Section 1983 Claim

Slaughter also brings a retaliation claim against COM under §1983. COM moves for

dismissal of this claim on the grounds that Slaughter has failed to plead sufficient facts to support liability on this claim because she has not allege sufficient facts to show that (1) COM had an unconstitutional policy concerning retaliation; (2) COM was deliberately indifferent; or (3) COM had any policy that was the moving force behind the alleged constitutional deprivations. (Dkt. No. 28).

"Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). "Section 1983 provides a remedy against 'any person' who, under the color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Governmental entities are "persons" within the meaning of §1983, however, they may only be held liable if the constitutional harm suffered was the result of an "official policy, custom, or pattern." *See Monell v. Dept. of Social Services*, 436 U.S. 658, 692-94 (1978); *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990). Governmental entities may not be held liable under a theory of *respondeat superior* or vicarious liability. *See Tuttle*, 471 U.S. at 817; *Monell*, 436 U.S. at 691; *Doe v. Taylor Indep. School Dist.*, 15 F.3d 443, 452 (5th Cir. 1994). Furthermore, governmental entities may not be held liable under § 1983 for mere negligence or oversight. *See Rhyne v. Henderson County*, 973 F.2d 386 392 (5th Cir. 1992) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989)). Instead, a §1983 action against a governmental entity must be based upon a violation of federally-protected rights through implementation or execution of a policy or custom adopted by that body's officers. *Monell*, 436 U.S. at 691; *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995). Local governmental entities are liable only when a plaintiff proves that an official policy or custom of the entity's final policy-

10

maker was the "moving force" that caused the deprivation of a constitutional right. *Monell*, 436 U.S. at 692; *Bennet v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). "It is [only] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

The essential elements of a § 1983 claim against a governmental entity requires a plaintiff to allege the following: (1) that a policy or custom existed; (2) that the governmental policy makers actually or constructively knew of its existence; (3) that a constitutional violation occurred; and (4) that the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996) (citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987).

The law recognizes that the policies need not be formal regulations, ordinances or resolutions. Instead, an informal policy can be inferred from conduct that reflects "practices of state officials so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)); *see also, Doe v. Taylor Indep. School Dist.*, 15 F.3d at 463 (recognizing that acts or omissions may serve as a predicate for finding a policy or custom). Accordingly, the Fifth Circuit has broadly defined "official policy" as:

> a. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> b. A persistent widespread practice of city officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents municipal policy.

11

*Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987), *rev'd on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Despite this broad definition, plaintiffs have been cautioned that they may not infer a policy merely because harm resulted from interaction with a government entity. *See Tuttle*, 471 U.S. at 822. Further, in addition to showing the existence of an "official policy", a plaintiff must also plead and, ultimately, prove each and every requisite element.

Finally, unlike claims against individuals, when considering the adequacy of a plaintiff's allegations of municipal liability under § 1983, there is no heightened pleading requirement. *Leatherman*, 507 U.S. at 168. Instead, as set forth in Rule 8(a), Plaintiffs need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*

In this case, Slaughter has pleaded a plausible retaliation claim under §1983. In particular, Slaughter alleges that she was engaged in constitutionally protected activity by coming forth as a witness and agreeing to testify in a civil action that former employee Brewer bought against COM. Although Slaughter does not expressly allege that her activity was protected by the First Amendment, this can be reasonably inferred based on her factual allegations.[6] *Cf. Wallace v. Dallas Indep. School Dist.*, No. Civ.A, 3:97-CV-2820-L, 2000 WL 575219, at *3 (N.D.Tex. May 11, 2000) (declining to dismiss claim on the ground that plaintiff did not specifically allege elements of First Amendment retaliation claim). Slaughter also alleges that she suffered adverse employment actions[7] by engaging in the protected activity and that there was a causal connection

---

[6] *See Robinson v. Jackson Public School Dist.*, 2011 WL 198127, at *5 (S.D.Miss. January 20, 2011) (commenting that workplace retaliation claims "find a natural home in Title VII, and [if brought under §1983] perhaps under the First Amendment.");

[7] The preceding section sets forth the adverse actions to which Slaughter claims she was subjected.

12

between her protected activity and the actions taken against her. *See Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) (holding that for purposes of a retaliation claim brought under §1983, a transfer that serves as a demotion qualifies as an adverse employment action); *Fisher v. Dallas County*, _ F.R.D._, 2014 WL 1516178, at 7 (N.D.Tex. April 18, 2014) (allegations that plaintiffs were transferred to a different position in retaliation for engaging in protected conduct, stated a plausible claim under §1983 that they were subject to adverse action); *Goudeau v. East Baton Rouge Parish School Bd.*, 540 Fed.Appx. 429, 434 (5th Cir. 2013) (recognizing that adverse action for purposes of a §1983 retaliation claim could include transfer to inferior school). Finally, Slaughter alleges that customs and/or practices of COM, acting through its Board, caused the adverse actions. For example, Slaughter alleges that COM, through its final policy-maker, knew of, or had constructive knowledge of that Bass was sexually harassing female employees. She contends that COM had a custom or practice of dissuading grievances from being filed regarding Bass' conduct, and, when a grievance was pursued for the harassment, COM had a custom or practice of failing to investigate or discipline Bass for his conduct, and of turning a blind-eye when employees (or their witnesses) were subjected to retaliation for pursuing the grievance and/or lawsuit.[8] Slaughter also alleges that these customs and practices were the moving force behind the violation of her constitutional rights. Taking her allegations as true, it is the opinion of this Court that COM's Motion to Dismiss should be denied because Slaughter has stated a plausible claim under §1983 for retaliation. While the Court recognizes that Slaughter's ability to prevail against COM on her retaliation claim may prove unsuccessful, the only issue at this point is whether she

---

[8] Slaughter insists that the only reason that COM finally investigated the actions Bass had taken against her was because she recorded the events.

13

has stated a claim that survives COM's Rule 12(b)(6) Motion. Given the allegations, Slaughter should be afforded the opportunity to conduct some discovery to determine whether there is sufficient evidence to support her claims. *Cf. Nami v. Fauver*, 82 F.3d 63, 65 (3rd Cir. 1996); *see also, Owen v. City of Independence*, 445 U.S. 622 (1980) (a government defendant has no qualified immunity to protect it from the burden of pretrial discovery). If Slaughter's claim proves to be unmeritorious, COM should soon be in a position to move for summary judgment on this claim, but, in the meantime, the Court concludes that its Motion to Dismiss Slaughter's retaliation claim under §1983 should be **DENIED**.

## CONCLUSION

Accordingly, it is hereby, **ORDERED AND ADJUDGED** that Defendant College of the Mainland's Amended Motion to Dismiss (Dkt. No. 28) is **GRANTED** as to the Plaintiff's retaliation claim under 42 U.S.C. §1981, but **DENIED** as to Plaintiff's retaliation claims under Title VII and 42 U.S.C. §1983.

**DONE** at Galveston, Texas, this  13th day of May, 2014.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE